NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL D. NELSON, | : | |
| | : | Civil Action No. 13-0705 (AET) |
| Petitioner, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| CHRISTOPHER HOLMES et al., | : | |
| | : | |
| Respondent. | : | |

IT APPEARING THAT:

1.   Petitioner filed a petition ("Petition") seeking habeas relief pursuant to 28 U.S.C. § 2254. See Docket Entry No. 1. The 27-page Petition, which is accompanied by a 43-page set of exhibits, see Docket Entries Nos. 1 and 1-1, raises six grounds ("Grounds").[1] See Docket Entry No. 1, at 21-27; see also id. at 5-11. Each of these Grounds is a narrative challenging numerous events that occurred between Petitioner's arrest and the conclusion of his post-conviction relief ("PCR") proceedings. See id.

2.   In his Petition, Petitioner asserts that he raised claims corresponding to his Grounds both during his direct appeal and during his PCR proceedings. See Docket Entry No. 1, at 5-11. However, the state claims addressed in the exhibits provided by Petitioner, see Docket Entry No.

---

[1]   An unduly lengthy submission violates Habeas Rule 2(d). See, e.g., Simms v. Shartle, 2013 U.S. Dist. LEXIS 34565, at *1 (D.N.J. Mar. 12, 2013); Samha v. Lagana, 2012 U.S. Dist. LEXIS 98191, at *1 (D.N.J. July 12, 2012). Moreover, while a pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989), "[h]abeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).

1-1, as well as those reflected in the electronic records of Petitioner's PCR proceedings, see, e.g., State v. Nelson, 2012 WL 694756 (N.J. Super. Ct. App. Div. 2012), substantively differ from the Grounds asserted in the Petition.  Accordingly, the Court cannot discern whether the Petitioner's state claims were raised only at one level of the state courts or were based on facts or law qualitatively different from underlying the Grounds at bar.   Being mindful of Petitioner's pro se status, the Court, therefore, finds it necessary to explain to him the concept of proper exhaustion and the options available to a litigant who has raised exhausted *and* unexhausted challenges.

3.      A state prisoner applying for a writ of habeas corpus in a federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective."  28 U.S.C. § 2254(b)(1); Rose v. Lundy, 455 U.S. 509, 515 (1982); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993); Duarte v. Hershberger, 947 F. Supp. 146 (D.N.J. 1996); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the [governing statute] mandate that, prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").  The courts of a state must be afforded an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Wilwording v. Swenson, 404 U.S. 249, 250 (1971); Picard v. Connor, 404 U.S. 270, 275 (1971); Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1230 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).

4.      A petitioner must exhaust state remedies by presenting his federal claims to *each* level of the state courts empowered to hear those claims, either on direct appeal or during the PCR

proceedings.  See Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); see also O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  Only if a petitioner's federal claims have been fairly presented to *each* level of the state court, is the exhaustion requirement satisfied.  See Picard, 404 U.S. at 275.  The petitioner bears the burden of proving all facts establishing exhaustion.  See Toulson, 987 F.2d at 987.  That means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  See Picard, 404 U.S. at 275.  Reliance on a certain constitutional provision or on a certain factual predicate is not sufficient: *both the legal theory and factual predicate must be the same with regard to each particular claim*.  See id. at 277.

> The rationale of the "substantial equivalent" requirement is self-evident in light of the standard of review applicable to federal habeas actions: habeas relief focuses on whether the state court's adjudication of the petitioner['s] claim "resulted . . . or involved an unreasonable application of . . . Supreme Court precedent."  28 U.S.C. § 2254(d).  If the legal theory and/or the factual predicate of each claim presented to the state courts differed from the legal theory and factual predicate of the claim presented for federal habeas review, the federal court cannot just "guess," without a record, whether the state courts would have adjudicated the particular legal-theory-and-factual-predicate claim offered for federal review in a fashion not unreasonable under the applicable Supreme Court precedent.

Crumbs v. Balicki, No. 10-5426, 2011 U.S. Dist. LEXIS 140603, at *3 (D.N.J. Dec. 7, 2011).[2]

5.      Where *any* procedure remains for the petitioner to raise his claims in the courts of the state, the petitioner has not exhausted the available remedies.  See 28 U.S.C. § 2254(c).  Correspondingly, district courts should dismiss petitions containing unexhausted claims, even if it is not likely that a state court will consider the claims on the merits.  See Rose, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, . . . the district court should have dismissed the petition . . . for failure to exhaust state remedies").

6.      Analogously, if a petition contains a mix of duly exhausted and unexhausted claims (such a petition is referred to as a "mixed" petition), the petition is also subject to dismissal.

---

[2]
> For instance, if – during his/her state litigations – a petitioner asserts two different factual predicates (i.e., two different sets of factual events) and two different federal claims, with each claim being correlated to its particular factual predicate, the petitioner cannot later "cris-cross" these factual predicates and claims for the purposes of his federal habeas proceedings.  To illustrate, if – during his/her state proceedings – a petitioner asserts that: (a) his/her counsel provided ineffective assistance by failing to object to certain remarks made by the prosecutor, and (b) that his/her trial court violated the petitioner's rights by denying him/her an opportunity to cross-examine a certain witness, the petitioner cannot later "repackage" or "cross-match" these challenges during his federal habeas proceedings into claims asserting that: (a) his counsel was ineffective by failing to seek an opportunity to cross-examine that witness; and (b) the trial court violated the petitioner's rights by failing to instruct the jurors to ignore the prosecutor's remarks.

Leach v. Hastings, No. 12-7605, 2013 U.S. Dist. LEXIS 23971, at *10 (D.N.J. Feb. 19, 2013).

> Faced with [a] "mixed" petition, the District Court ha[s] four options: [(1)] dismiss the petition without prejudice under Rose [v. Lundy, 455 U.S. 509, unless such dismissal would mean that the petitioner's amended petition would necessarily be bound for dismissal as untimely, see Urcinoli, 546 F. 3d 269], [(2)] "stay and abey" under Rhines [v. Weber, 544 U.S. 269 (2005)], [(3)] allow [the petitioner] to delete his unexhausted claims, see Rhines, 544 U.S. at 278, or, [(4)] if all of his claims are meritless, deny the petition under § 2254(b)(2) (allowing denial of a petition on the merits "notwithstanding the failure of the applicant to exhaust . . .").

Leach, 2013 U.S. Dist. LEXIS 23971, at *12 (quoting Mahoney v. Bostel, 2010 U.S. App. LEXIS 3916, at *5-6 (3d Cir. N.J. Feb. 24, 2010)).

7.  Here, the discrepancy between Petitioner's six Grounds and his challenges ruled upon in the state courts' decisions makes it impossible for the Court to discern whether the Petition has been fully unexhausted. Therefore, the Court will allow Petitioner an opportunity to: (a) assert only those challenges that have been duly exhausted before all three levels of the state courts; or (b) seek stay and abeyance so to exhaust his unexhausted claims in the state forum. Thus, he will be directed to file a written statement to that effect.

8.  In conjunction with the foregoing, the Court finds it warranted to notify Petitioner of the following consequences of filing such a § 2254 application under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), and to give him an opportunity to file one all-inclusive § 2254 application. Under the AEDPA, petitioners challenging the legality of their detention pursuant to a state-court decision must marshal in one § 2254 application all the arguments they have to collaterally attack that decision and, except in extremely limited circumstances, file one all-inclusive application within a one-year period, as that period is defined by the AEDPA's limitations provision. See 28 U.S.C. § 2244(d). Thus, Petitioner's written statement should include *all* his duly exhausted claims he

wishes to litigate and, in addition, include *all* his unexhausted challenges, if any, with regard to which Petitioner wishes to seek stay under Rhines v. Weber, 544 U.S. 269.[3]

An appropriate Order accompanies this Opinion.[4]

                                          */s/ Anne E. Thompson*
                                          ANNE E. THOMPSON
                                          United States District Judge

Dated: April 29, 2013

---

[3]    Petitioner shall not pack multiple challenges into a single ground. Rather, in the event any particular challenge has been fully exhausted (or Petitioner wishes to seek a stay as to any particular challenge), he should detail the factual predicate and the legal claim of that challenge individually, making it a separate ground.

[4]    Since Petitioner might elect to seek stay of this matter, the Court will direct the Clerk to mark this case administratively terminated. The Court, however, stresses that an administrative termination is *not* a dismissal on merits, and this Court does *not* withdraw its jurisdiction over this matter. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 87, n.2 (2000) (citing 9 U.S.C. § 16(b)(1) for the observation that, where a "District Court enter[s] a stay instead of a dismissal in this case, that order" is not a final determination triggering appeal). The courts agree that "an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository." Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 392 (1st Cir. 1999); see also Mire v. Full Spectrum Lending Inc., 389 F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.*, administratively closed cases are not counted as active . . . . That situation is the functional equivalent of a stay, not a dismissal"). The United States Court of Appeals for the Third Circuit discussed the tool of administrative termination with approval, noting its use for the purposes of effective case management. See Penn W. Assocs., Inc. v. Cohen, 371 F.3d 118, 126-28 & n.9 (3d Cir. 2004); see also Mercer v. Allegheny Ludlum Corp., 132 F.R.D. 38, 38-39 (W.D. Pa. 1990), aff'd, 931 F.2d 50 (3d Cir. 1991) (same). Moreover, the Court of Appeals: (a) suggested that a district court's resort to the tool of administrative termination is indicative of the district's tidy docket management, see Penn, 371 F.3d at 128 (noting that the "Lehman's view of administrative closings has been followed by the Courts of Appeals for the Tenth and Eleventh Circuits" and citing, inter alia, the concurring opinion in Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 715 (5th Cir. 2002), which observed that "administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets"); and (b) concluded its assessment of the tool with the following unambiguous endorsement: "[administrative termination is] a device that, when used in correct context, enhances a district court's ability to manage its docket." Id. at 118.