RECEIVED

JUN 0 7 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL D. NELSON,

        Petitioner,

v.

CHRISTOPHER HOLMES, et al.,

        Respondents.

HONORABLE ANNE E. THOMPSON

Civil Action
No. 13-0705 (AET)

**OPINION**

**THOMPSON, District Judge:**

## I. INTRODUCTION

Michael D. Nelson has submitted an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Amended Petition, Docket Entry 5. Respondent Christopher Holmes opposes the petition. Answer, Docket Entry 20. For the reasons stated herein, the petition shall be denied and no certificate of appealability shall issue.

## II. BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court Appellate Division in its opinion denying Petitioner's post-conviction relief ("PCR") appeal:

On April 30, 2000, the China Moon Chinese restaurant in Trenton was the site of an armed robbery. While being held at gunpoint, the owner of the restaurant handed over approximately $300 to a masked man whose voice she recognized as a frequent customer.

Police officers responded to the scene and interviewed the owner. A physical description of the individual with the gun was obtained and instantly broadcast to police officers in the field. Nelson was observed a few blocks away from the China Moon, and a chase ensued. With the assistance of a canine, Nelson was soon discovered lying on a deck in someone's backyard. When approached by a police officer with the dog, Nelson blurted out, "I give up, don't let the dog bite me," and "you got me, you got me." Lastly, Nelson was reported as saying, "you got me, I know I'm going to go to state prison for this." Less than thirty minutes had elapsed from when the police obtained a description of the robber to when Nelson was arrested.

After helping Nelson to his feet, the arresting officer observed and recovered $299 in cash that had been underneath Nelson's prone body. After receiving *Miranda*[1] warnings, Nelson offered to take the police to where he had discarded the gun. Before he could do that, however, another police officer found the weapon: a sawed-off shotgun.

*State v. Nelson*, No. A-3078-10, 2012 WL 694756, at *1 (N.J. Super. Ct. App. Div. Mar. 6, 2012); R32.[2] A Mercer County grand jury later indicted Petitioner on charges of first-degree robbery, N.J. STAT. ANN. § 2C:15-1 (Count One); second-degree possession of a weapon for an unlawful purpose, N.J. STAT. ANN. § 2C:39-4(a) (Count Two); third-degree possession of a sawed-off

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2] "R" refers to the exhibits submitted with Respondent's Answer, Docket Entries 20 and 21. "Pa" refers to the appendix to the Traverse, Docket Entry 26.

shotgun, N.J. STAT. ANN. § 2C:39-3(b) (Count Three); third-degree theft by unlawful taking, N.J. STAT. ANN. § 2C:20-3(a) (Count Four); and second-degree certain persons not to possess a firearm, N.J. STAT. ANN. § 2C:39-7(b) (Count Five). Answer at 23.

Trial counsel moved to suppress the evidence seized as the result of a warrantless search. Officers Woodhead and Delli and Detective Paccillo from the Trenton Police Department testified at a motion hearing on behalf of the State over the course of two days. 1T-2T.[3] The trial court determined the money and shotgun were properly seized by the officers. 2T78:4-9. Petitioner's statements to the officers were admitted into evidence after a *Miranda* hearing. *See* 3T68:1 to 73:8.

---

[3] 1T – Transcript of Motion to Suppress dated January 19, 2001.
  2T – Transcript of Motion to Suppress dated January 26, 2001.
  3T – Transcript of *Miranda* Hearing dated August 20, 2002.
  4T – Transcript of Motion Hearing dated August 26, 2002.
  5T – Transcript of Trial dated August 27, 2002.
  6T – Transcript of Trial dated August 28, 2002.
  7T – Transcript of Trial dated August 29, 2002.
  8T – Transcript of Trial dated September 3, 2002.
  9T – Transcript of Trial dated September 4, 2002.
  10T – Transcript of Trial dated September 5, 2002.
  11T – Transcript of Trial dated September 10, 2002.
  12T – Transcript of Sentencing dated February 28, 2003.
  13T – Transcript of Resentencing dated July 13, 2007.
  14T – Transcript of Post-Conviction Relief Motion Proceedings dated July 2, 2010.

Petitioner later sought to have the trial court direct the state to turn over Officers Woodhead's and Delli's Internal Affairs files. He had previously subpoenaed the files as he had filed an excessive force complaint against them due to receiving dog bites from Officer Delli's K-9 partner, Simba, and other injuries during his arrest. *See* 3T14:21 to 15:23. The trial court conducted an in camera review of the investigation file and concluded there was "absolutely nothing in the internal affairs file that would be appropriate to turn over to [trial counsel]." 4T14:12-13. It stated that Petitioner could make his allegations if he testified, but the complaint itself would not be admissible. 4T14:20-24.

The State presented testimony from Officers Woodhead, Delli, Jones, Detectives Mathes and Paccillo, and Lieutenant Wittmer. The victim of the robbery, Yan Yang Hong, also testified with the aid of an interpreter. During her direct testimony, Ms. Hong testified she recognized the voice of the robber as a customer of the restaurant. 7T40:6-8. As this was the first time she mentioned recognizing the voice, the trial court conducted a hearing outside of the jury's presence. 7T41:6. Ms. Hong then testified she had informed the prosecutor and Detective Petracca that she recognized the robber's voice as belonging to Petitioner during her meeting with them the prior week. 7T48:20-21. Trial counsel requested a mistrial based the

4

fact that the prosecutor was now a potential witness to Ms. Hong's statement and because Ms. Hong allegedly saw Petitioner in shackles prior to her testimony. 7T54:19 to 55:9. The court denied the motion as Detective Petracca was available to testify about the meeting and there would not be a problem so long as Ms. Hong did not mention she saw Petitioner shackled. 7T62:7 to 63:23.[4] When the jury returned, Ms. Hong testified she knew Petitioner as a customer of the China Moon. 7T66:18-22.

The jury ultimately convicted Petitioner of first-degree robbery and third-degree theft by unlawful taking. Petitioner was acquitted of possession of a weapon for an unlawful purpose and possession of a sawed-off shotgun. The possession of a firearm by a convicted person charge was dismissed by the court. R28 at 1-2. The trial court merged the convictions and imposed an extended term of fifty-years with a twenty-five year period of parole ineligibility. 12T75:9-20. Petitioner appealed, and the Appellate Division affirmed the convictions but remanded to the trial court for resentencing. *State v. Nelson*, No. A-1729-03 (N.J. Super. Ct. App. Div. Aug. 12, 2005), *certif. denied*, 886 A.2d 662 (N.J. 2005); R28. On July 13, 2007, the trial court

---

[4] Detective Petracca later testified on behalf of the defense. He testified Ms. Hong had identified a picture of Petitioner as a frequent customer, but had not indicated that she recognized the voice of the robber. 9T112:20 to 113:9. He further indicated this interview of Ms. Hong was conducted without the assistance of an interpreter. 9T113:15-18.

resentenced Petitioner to twenty years with a seventeen-year period of parole ineligibility. 13T:34:10-15. The sentence was upheld on appeal. *State v. Nelson*, No. A-3819-07 (N.J. Super. Ct. App. Div. May 28, 2009); R24 at 20.

Petitioner filed a PCR petition on January 11, 2007, R19, but it was held in abeyance until Petitioner's direct appeal was concluded. The PCR court conducted a motion hearing on July 2, 2010 and denied the petition without ordering an evidentiary hearing on August 30, 2010. 14T; R15. The Appellate Division affirmed the order of the PCR Court, *State v. Nelson*, No. A-3078-10, 2012 WL 694756 (N.J. Super. Ct. App. Div. Mar. 6, 2012), and the New Jersey Supreme Court denied certification on July 12, 2012, *State v. Nelson*, 50 A.3d 41 (N.J. 2012).

Petitioner submitted a § 2254 petition on January 29, 2013. Petition, Docket Entry 1. The Court administratively terminated the petition on May 2, 2013 as it was unable to determine whether his claims were properly exhausted and to notify him as to the consequences of filing a § 2254 petition. Memorandum Opinion and Order, Docket Entries 3 and 4. Petitioner submitted his amended petition on June 15, 2013. After receiving several extensions of time, Respondent filed its answer on March 6, 2015. Petitioner informed the Court that he had not received the transcript of the July 2, 2010 PCR hearing and moved to expand

the record. Docket Entries 24 and 25.[5] He filed his traverse on April 8, 2015, and referenced the July 2, 2010 transcript. Traverse at 3. The Court directed Respondent to file a new certificate of service indicating the date Petitioner was served with the transcript. Docket Entry 27.

This matter is now ripe for decision as the Court finds that an evidentiary hearing is not warranted. *See* 28 U.S.C. § 2254(e)(2); *Taylor v. Horn*, 504 F.3d 416, 435–37 (3d Cir. 2007).

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[5] The Court received a copy of the transcript on March 16, 2015. Docket Entry 23.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**IV. ANALYSIS**

Petitioner raises six grounds for relief:

I.    Trial Counsels [sic] failure to impeach Detective Mathes with prior inconsistent statement in affidavit of probable cause deprived Petitioner of 6th Amend. right to confront and cross-examine state witness at trial.

8

II.   Direct appeal counsel[']s failure to raise identification claim on appeal was deficient performance rendered, his sole challenge to conviction an equivalent to failure to challenge conviction at all.

III.  Trial court[']s exclusion as evidence for impeachment purposes the Petitioner[']s complaint of false arrest and excessive force against state witness's [sic] violated the Confrontation Clause of the Sixth Amend.

IV.   Counsels [sic] failure to include in motion to suppress evidence the defects that occurred during procedure after Petitioners [sic] warrantless arrest prejudiced the outcome of the suppression hearing.

V.    Counsel failure to incorporate the [911] dispatcher logs into his cross-examination of Officers Woodhead, Delli, Jones, and Lt Wittmer was a gross dereliction of his duty to confront state witnesses.[6]

VI.   Counsel's failure to call defense investigator as a material fact witness deprived Petitioner of his right to rebut testimony from Officer[] Jones regarding the location of the weapon recovery.[7]

Petition ¶ 12; Petitioner's Brief at 10-13. Respondent

asserts the petition is untimely and is otherwise

meritless.[8]

---

[6] The Court has used the language appearing in Petitioner's traverse for this point. Traverse at 9.

[7] The Court has used the language appearing in Petitioner's traverse for this point. Traverse at 20.

[8] The answer contains mostly boilerplate and only briefly engages with the actual facts of the case. Respondent is advised that any future briefs that fail to sufficiently answer claims raised will be stricken.

## A. Timeliness

Respondent argues Petitioner has filed his § 2254 petition too late and is therefore barred by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This argument is without merit.

AEDPA imposes a one-year period of limitation on a petitioner seeking to challenge his state conviction and sentence through a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Respondent argues the petition is untimely as it was filed more than one year after Petitioner's conviction became final.

Petitioner was sentenced by the trial court on February 28, 2003. 12T. He filed his notice of appeal on November 20, 2003, more than the 45-day period provided under New Jersey law for a timely appeal. *See* N.J. Ct. R. 2:4-1(a). Respondent argues this time counts towards the 365-day AEDPA limitations period; it does not. Because the Appellate Division permitted Petitioner to file an out-of-time direct appeal and vacated his sentence, the judgment was not final within the meaning of § 2244(d)(1) until 45 days after the Appellate Division denied the resentencing appeal, *State v. Nelson*, No. A-3819-07 (N.J. Super. Ct. App. Div. May 28, 2009).[9] *See Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (noting AEDPA limitations period does not begin "until both [petitioner's] conviction *and* sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review'" (emphasis in original)); *Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment.").

By the time his direct appeal concluded, Petitioner's PCR petition was already properly filed in the state courts. R19. He is therefore entitled to statutory tolling until the New Jersey Supreme Court denied certification of his PCR appeal on July 10,

---

[9] It does not appear from the record provided to the Court that Petitioner sought certification from the New Jersey Supreme Court to review the resentencing.

2012. *See* 28 U.S.C. § 2244(d)(2). His petition was filed less than one year later on January 29, 2013.

The Court finds that the § 2254 petition is timely under § 2244(d)(1).

## B. Confrontation Clause

In Ground Three, Petitioner asserts the trial court violated his Confrontation Clause rights by excluding from evidence his complaint against Officers Woodhead and Delli for false arrest and excessive force. This claim was decided on the merits on direct appeal.

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. CONST. amend. VI. "The right of confrontation . . . means more than being allowed to confront the witness physically. Indeed, [t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.'" Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal citations and quotation marks omitted)(emphasis and alteration in original). The Supreme Court has "'recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" *Id.* at 678-79 (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)). "[A] criminal defendant states a

violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680 (quoting *Davis*, 415 U.S. at 318)(omission in original).

"[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679. Here the trial court concluded Petitioner's "self-serving" complaint would not add anything to the proceedings. 4T30:16-19. Unlike *Van Arsdall*, the trial court did not prohibit Petitioner from pursuing an entire line of questioning; only the complaint itself was excluded from evidence. Trial counsel's cross-examination of the officers covered the substance of the complaint, namely that the officers used excessive force against Petitioner by allowing K-9 Simba to bite him repeatedly, lied about where and how Petitioner was arrested, and falsely arrested Petitioner. *See* R26 at 28; 3T14:24 to 15:9.

Trial counsel questioned Officer Woodhead at length about Officer Woodhead's claims that Petitioner offered to show him the shotgun's location, 6T116:2 to 117:24; the omission of certain alleged facts from his report, 118:18 to 119:5, 121:22 to 122:13, 147:13-19; alleged inconsistent testimony at other proceedings, 119:23 to 121:14, 149:15-22; and Petitioner's complaint of being bitten by K-9 Simba, 121:22 to 122:13, 130:7-18.

Trial counsel equally attacked Officer Delli's credibility during cross-examination regarding the accuracy of K-9 Simba's "track," 8T20:14 to 26:17, 64:4 to 65:16; his initial encounter with Petitioner, 45:3 to 46:12, 48:3 to 49:1; and Petitioner's allegations of being bitten, 46:13 to 47:16, 53:15 to 54:4, 57:25 to 59:7. Petitioner's medical records from Saint Francis, showing bites on Petitioner's left arm, were admitted into evidence, 9T108:23 to 109:6; R26 at 60-64, and Officer Delli admitted during cross-examination that he was informed there was a wound on Petitioner's left arm, 9T57:25 to 58:6. *See also* 3T16:8-19.

Moreover, as the Appellate Division noted, trial counsel "repeatedly invited the jury to reject the State's theory of culpability based upon the defense's contentions of police misconduct." *State v. Nelson*, No. A-3078-10, 2012 WL 694756, at *4 (N.J. Super. Ct. App. Div. Mar. 6, 2012). He argued:

14

These are hospital records. . . . Why won't any officer
admit to it? It doesn't fit. It fits something. It fits
what [K-9] Simba did to Mr. Nelson back in the back of
85 Oak Lane. We have medical records for Michael Nelson
on May 1st of 2000, the early morning hours shortly after
the apprehension, and our clinical impression is dog
bite. . . . It says what it says. Provoked attack,
canine, subduing suspect. Animal bite, dog bite,
scratch, left arm. It makes note of a bruise on his leg.
Officer Delli says his dog never got near him. How can
this be? It doesn't fit. Is the state going to ask you
to believe that Mr. Nelson, when he got to the police
station, decided to say he was bit by a dog, or was bit
by a different dog at a different time that night so he
had a fresh wound to show at the hospital[?] It's
ridiculous. The dog bit him.

. . . .

I suggest to you Officer Delli let his dog loose. Officer
Delli tells you the dog never even went on the porch,
and the first time I saw the guy, he's lying on his belly
with his hands underneath him all the way against the
building ten feet away from the end of the leash. I ask
you how does a man who is lying on his belly with his
hands under him ten feet away from the leash get bit on
the shoulder. I suggest to you that we're hearing a
falsehood, and everything Officer Delli tells you from
that moment on is suspect.

10T37:7 to 38:4, 39:8-18.

Based on the record, the Appellate Division did not reach a

decision that was contrary to, or was an unreasonable

application of, established federal law when it determined there

was no merit to Petitioner's claim. It is a reasonable

conclusion that a jury would not "have received a significantly

different impression of [the officers'] credibility" had the

complaint been admitted given the other testimony and documents

15

in evidence. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Petitioner's Confrontation Clause argument fails.

## C. Ineffective Assistance of Counsel

The remainder of Petitioner's claims are allegations of ineffective assistance of trial and appellate counsels. These claims are governed by the *Strickland* standard. Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Furthermore, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

*1. Whether trial counsel was ineffective for failing to cross-examine Detective Mathes regarding inconsistencies in his affidavit of probable cause (Ground One)*

Petitioner's first claim of ineffective assistance by his trial counsel concerns the failure to cross-examine Detective Mathes as to alleged inconsistencies and falsehoods in his affidavit of probable cause. "Detective Mathes declared in the affidavit that a victim/witness statement led him to believe that the petitioner was the culprit who committed the robbery in this case. . . . Because the Police needed the assistance of an interpreter on the above date to communicate with the victim in a [Cantonese] dialect, a statement was not actually memorialized until the interpreter was available on May 9, 2000. [N]o one mentions or otherwise identifies he petitioner as being the perpetrator of the crime in this matter." Petitioner's Brief at 6 (emphasis omitted).

The PCR court determined trial counsel did not err in failing to highlight this alleged inconsistency during cross-examination because there was no inconsistency. "Although the Defendant is correct that the victim witness statements were not taken until a week or so later, the victim did make statements to the responding officer describing the height, weight, and clothing of the person who robbed her on the night of the robbery." R15 at 14 (citing 9T89:24 to 90:10). This is a reasonable reading of the record, therefore the PCR Court did

not unreasonably apply *Strickland* in concluding that trial counsel did not err. Because Petitioner has not established that his trial counsel erred, the Court need not determine whether he was prejudiced. *See United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) ("[F]ailure to satisfy either prong defeats an ineffective assistance claim.").

Petitioner is not entitled to relief on this ground.

*2. Whether trial counsel was ineffective for failing to include the alleged defects in the complaint in his in motion to suppress evidence (Ground Four)*

Petitioner also argues the complaint issued against him was defective, therefore the evidence seized by police should have been suppressed. He asserts trial counsel was aware of the procedural defects in the complaint but failed to raise them during the motion to suppress. Contrary to Petitioner's assertion that the state court did not address this claim, *see* Petitioner's Brief at 10, the Appellate Division summarily concluded this argument was without merit. *State v. Nelson*, No. A-3078-10, 2012 WL 694756, at *3 (N.J. Super. Ct. App. Div. Mar. 6, 2012) (citing N.J. Ct. R. 2:11-3(e)(2)). Therefore, this Court must apply AEDPA "double deference."

Petitioner's argument that alleged defects in the issuance of the complaint required the suppression of the evidence has no merit. Petitioner was arrested and the money and shotgun were seized without a warrant before the complaint was issued.

18

Whether there was a procedural defect in the issuance of the complaint has no bearing on the admissibility of evidence that was seized before the complaint was issued.

The only relevant question at the motion to suppress hearing was whether any of the exceptions to the Fourth Amendment's warrant requirement applied to the warrantless seizure of the money and shotgun. The suppression cases cited by Petitioner, *e.g, Wong Sun*,[10] are cases in which the unconstitutional activity occurred before the search and seizure, thereby tainting the discovered evidence, not after it.

As the alleged procedural defects in the complaint process were irrelevant to the motion to suppress, trial counsel was not objectively unreasonable for failing to raise that argument. The Appellate Division was therefore not unreasonable in its determination that Petitioner had not satisfied *Strickland*.

*3. Whether trial counsel was ineffective for failing to use the dispatcher logs during his cross-examination of Officers Woodhead, Delli, Jones, and Lt. Wittmer (Ground Five)*

Petitioner also asserts trial counsel erred by failing to use the dispatcher logs, *see* R26 at 52-55, during his cross-examination of the officers.[11] Based on the record before the

---

[10] *Wong Sun v. United States*, 371 U.S. 471 (1963).
[11] Petitioner concedes trial counsel made a deliberate, strategic decision not to use the dispatch log during cross-examination, Traverse at 18, and the record supports this conclusion. *See* 12T7:19-25 ("I represent to the Court that I anticipate, and I am certain that the documentation that Mr. Nelson wishes to

19

state courts, Petitioner has not shown that the state courts unreasonably applied *Strickland*.

Petitioner asserts the PCR court's decision was unreasonable because the records are not inadmissible hearsay. Traverse at 16. However, the PCR court did not base its decision on the records being hearsay; it concluded they were irrelevant. It found that the dispatch logs were not created by the officers contemporaneously with their radio transmissions and were instead created by police dispatchers. The court further found that the time-stamps reflected the time the dispatchers created each entry, not the time the actual event occurred. *See* R15 at 14-15. Nothing in the record or in Petitioner's submissions contradicts those factual findings by clear and convincing evidence or otherwise indicates that these findings are unreasonable. 28 U.S.C. § 2254(e)(1). In light of those facts, it is not an unreasonable conclusion that there was not a reasonable probability the trial would have ended differently had trial counsel used the logs to cross-examine the officers. The state courts therefore reasonably applied *Strickland*, and Petitioner's claim fails on this point.

---

present to the Court involves a different trial strategy or a different presentation of the defense evidence which I will, quite frankly, put on the record I rejected as trial attorney.").

*4. Whether trial counsel was ineffective for failing to call the defense investigator to rebut testimony from Officer Jones regarding the location of the weapon (Ground Six)*

Petitioner argued in his PCR petition that trial counsel should have rebutted Officer Jones' testimony regarding the location of the shotgun by calling the defense investigator as a witness. According to Petitioner, the investigator determined that the shotgun could not have been retrieved from near a shed located behind 80-82 Oak Lane as Officer Jones testified. Petitioner's Brief at 12. He asserts the shed, "distinguishable by red, black and white graffiti scrawled on the façade of the structure" was three blocks away on Laurel Avenue. *Ibid.*

This Court's review is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *Grant v. Lockett*, 709 F.3d 224, 230-31 (3d Cir. 2013). Petitioner did not present the alleged photographs or investigator report to the PCR court. R15 at 15; *see also State v. Nelson*, No. A-3078-10T1, 2012 WL 694756, at *4 (N.J. Super. Ct. App. Div. Mar. 6, 2012). There was nothing in the record before the PCR court that would support a conclusion that there was a reasonable probability the result of the trial would have been different had trial counsel presented Johnson as a witness. Petitioner has not shown that the PCR court's application of *Strickland* was unreasonable based on the record that was before

21

it; therefore, he is not entitled to habeas relief on this ground.

*5. Whether direct appeal counsel was ineffective for failing to raise identification claim on appeal (Ground Two)*

Petitioner's final claim for relief is that his counsel on direct appeal was ineffective for failing to argue that the trial court should have issued a jury instruction on Ms. Hong's "surprise identification" of Petitioner during trial.

The PCR court concluded the trial court was not required to provide an identification instruction because "there was no fundamental issue of eyewitness identification in this case; rather, Petitioner was identified and convicted based upon the cumulative effect of circumstantial evidence and his own incriminating states made to the arresting officers." R15 at 19. It further found that "[a]lthough the victim testified that she recognized Petitioner as a frequent customer of her restaurant and the voice of the robber as that of a customer, she never provided testimony specifically identifying Petitioner as the robber." *Ibid.* The PCR court determined that the model jury instruction on in-court identification did not apply because there was no in-court identification and that appellate counsel did not err by failing to raise it on appeal. R15 at 19. This is

a reasonable conclusion based on the record;[12] therefore, the PCR court did not unreasonably apply *Strickland*.

Furthermore, to establish the prejudice prong for a claim of ineffective assistance of appellate counsel, Petitioner must show "that there is a 'reasonable probability' — 'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence — that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting Strickland, 466 U.S. at 694-95). The Appellate Division reasonably applied *Strickland* when it found that raising the charge issue on appeal "would have been futile in light of the lack of an actual identification having been made a significant issue at trial, and the abundance of other evidence, albeit circumstantial, that linked Nelson to the crimes." *State v. Nelson*, No. A-3078-10, 2012 WL 694756, at *4 (N.J. Super. Ct. App. Div. Mar. 6, 2012).

---

[12] Petitioner asserts that Ms. Hong testified "that she recognized the masked robber's voice as belonging to the petitioner." Petitioner's Brief at 8. This testimony was outside of the jury's presence. 10T41:6, 45:4-19. The jury only heard Ms. Hong state that she recognized the robber's voice "[b]ecause his voice is very rough and very low, and I recognize the voice. The voice is the customer constantly come into my restaurant[,]" 10T40:6-8, and that she recognized Petitioner as a customer, 10T66:15 to 67:3.

23

As Petitioner has not met either prong of the *Strickland* analysis, his claim fails.

## D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of his claims, the Court shall deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, the habeas petition is
denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.

$\frac{6/6/17}{\text{Date}}$

ANNE E. THOMPSON
U.S. District Judge